IN the MATTER OF the COMMITMENT OF Glenn Allen THAYER:

STATE of Wisconsin, Plaintiff-Respondent,

v.

Glenn Allen THAYER, Respondent-Appellant.†

Court of Appeals

*No. 98–3691. Submitted on briefs October 2, 2000.—Decided January 24, 2001.*

2001 WI App 51

(Also reported in 626 N.W.2d 811.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jane Krueger Smith* of Oconto Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Stephen W. Kleinmaier*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Glenn Allen Thayer, a WIS. STAT. ch. 980 committed patient, appeals a trial court's orders denying his motion for an evidentiary hearing pursuant to WIS. STAT. § 980.09(2)(b) (1997–98),[1] his petition for discharge and his motion for a new § 980.09(2)(a) hearing. Thayer argues that he had the right to present documentary evidence at the § 980.09(2)(a) probable cause hearing, that the burden

_____

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

of persuasion was erroneously placed upon him at the probable cause hearing, that the facts introduced at the probable cause hearing warranted a full evidentiary hearing pursuant to § 980.09(2)(b), that the trial court misconstrued its role at the probable cause hearing, and that the late appointment of counsel prior to the probable cause hearing violated his due process rights. We disagree with all of these contentions and affirm the trial court's orders.

## FACTS

¶ 2. Thayer was initially committed to the Wisconsin Resource Center (WRC) as a sexually violent person pursuant to WIS. STAT. § 980.06 in February 1996 in Calumet county. In 1998, as part of Thayer's annual review, Kurt Schwebke, a WRC staff psychologist, prepared a reexamination report pursuant to WIS. STAT. § 980.07(1). At the time of the reexamination, Thayer did not waive his right to petition for release pursuant to § 980.07(1) and thus the hearing provisions of WIS. STAT. § 980.09 were triggered.

¶ 3. A WIS. STAT. § 980.09(2)(a) probable cause hearing was held on September 21, 1998, before Judge Fred H. Hazlewood. Attorney Garrett Kavanagh of the State Public Defender's office represented Thayer at that hearing. The only evidence presented at this probable cause hearing to determine if Thayer was still a sexually violent person was Schwebke's reexamination report. At the close of the hearing, Judge Hazlewood declined to grant Thayer a § 980.09(2)(b) evidentiary hearing and an appeal followed.

¶ 4. The appellate division of the public defender's office originally handled the initial appeal. However, the appellate attorney filed a motion to withdraw as counsel. Withdrawal was allowed and present

counsel was appointed on February 24, 1999. On March 26, 1999, we ordered this matter remanded to the trial court for the filing of motions. A motion for a new WIS. STAT. § 980.09(2)(a) hearing based upon ineffective assistance of counsel was heard on November 3, 1999. The motion was ultimately denied. Thayer appeals this decision.

## DISCUSSION

¶ 5. Thayer challenges the application of various provisions of WIS. STAT. ch. 980. The interpretation or construction of a statute as applied to a set of undisputed facts is a question of statutory construction that we review de novo. *See State v. Paulick*, 213 Wis. 2d 432, 435, 570 N.W.2d 626 (Ct. App. 1997). We will address each of Thayer's issues separately.

### Right to Present Evidence

¶ 6. Thayer argues that he had the right to present documentary evidence, including an expert's report, at the WIS. STAT. § 980.09(2)(a) probable cause hearing; consequently, Kavanagh's ignorance of this right constitutes ineffective assistance of counsel. Thayer misunderstands § 980.09(2)(a) procedure.

¶ 7. WISCONSIN STAT. § 980.09(2)(a) reads:

A person may petition the committing court for discharge from custody or supervision without the secretary's approval. At the time of an examination under s. 980.07(1), the secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the secretary's objection. The notice shall contain a

waiver of rights. The secretary shall forward the notice and waiver form to the court with the report of the department's examination under s. 980.07. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing.

This § 980.09(2)(a) probable cause hearing is merely a paper review of all reexamination reports accompanied by argument from counsel and is designed to allow the trial court to eliminate any frivolous petitions. *See Paulick*, 213 Wis. 2d at 438–39. The legislature did not intend for a § 980.09(2)(a) probable cause hearing to be the equivalent of a full evidentiary hearing. *See Paulick*, 213 Wis. 2d at 438. Thus, at this stage Thayer was not entitled to present any or all evidence that he wanted.

¶ 8. However, as noted in *Paulick*, the WIS. STAT. § 980.09(2)(a) probable cause hearing is a paper review of any reexamination reports submitted to the court pursuant to WIS. STAT. § 980.07. The use of reexamination reports is governed by § 980.07, which states in pertinent part:

(1) If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress to be entitled to transfer to a less restrictive facility, to supervised release or to dis-

charge. At the time of a reexamination under this section, the person who has been committed may retain or, if he or she is indigent and so requests, the court may appoint a qualified expert or a professional person to examine him or her.

**(2)** Any examiner conducting an examination under this section shall prepare a written report of the examination no later than 30 days after the date of the examination. The examiner shall place a copy of the report in the person's medical records and shall provide a copy of the report to the court that committed the person under s. 980.06.

Subsection (1) allows a WIS. STAT. ch. 980 patient to retain an independent medical examiner and then submit a second, independent medical report to the court.
█

¶ 9. Thayer argues that Kavanagh's ignorance of Thayer's right to present evidence at the WIS. STAT. § 980.09(2)(a) probable cause hearing constitutes ineffective assistance of counsel. However, as noted, this right to present evidence is limited to the right to present an independent reexamination report. Thus, the only evidence Thayer arguably had a right to present would be a second, independent medical report.

¶ 10. Kavanagh testified at the November 3, 1999 motion hearing that based upon his reading of *Paulick*, he did not believe Thayer had the right to present any evidence at the probable cause hearing. Kavanagh testified that a reading of WIS. STAT. § 980.09(2)(a) suggests that a committed person has the right to a court-appointed examination prior to the hearing, but Kavanagh believed that in *Paulick*, "the Court of Appeals clearly stated [Thayer] did not have such a right." Kavanagh therefore concluded that Thayer was not "entitled to an additional psychological exam at this point" because "*Paulick* . . . clearly states

that [Thayer] has no right to present anything further at that point. . . . [I]t's a paper review and the court is to review the documents filed, which is the doctor's report and non-waiver by the respondent." Kavanagh misunderstands the holding of *Paulick*.

¶ 11. In *Paulick*, we held that WIS. STAT. ch. 980 affords annual review of a commitment and "allows the committed person to petition for release, with the trial court acting as the gatekeeper weeding out frivolous petitions by committed persons who allege that they are no longer dangerous and are fit for release." *Paulick*, 213 Wis. 2d at 434. We did not interpret WIS. STAT. § 980.09(2)(a) as requiring more than a paper review "unless facts exist that warrant a hearing on whether the committed person is a sexually violent person." *Paulick*, 213 Wis. 2d at 434.

¶ 12. We concluded that WIS. STAT. § 980.09(2)(a), providing for a probable cause hearing, was ambiguous and that the statute was silent as to the precise procedural requirements of the hearing. *See Paulick*, 213 Wis. 2d at 436. We thus considered the language of § 980.09 in its entirety and related sections and concluded that § 980.09(2)(b) requires the court to set a second evidentiary hearing only if it determines at the § 980.09(2)(a) probable cause hearing that "probable cause exists to believe that the committed person is no longer a sexually violent person . . . ." Section 980.09(2)(b). We held that because "the second hearing under paragraph (b) specifically entitles the committed person to the listed due process protections, as well as the right to be present at the hearing," the probable cause hearing in paragraph (a) "does not contemplate an evidentiary probable cause hearing . . . ." *Paulick*, 213 Wis. 2d at 437. Instead, "the paragraph (a) probable cause hearing is a hurdle for the committed person

to clear before he or she receives a paragraph (b) discharge hearing—once adequate cause is shown, a discharge hearing must be held." *Id.* We specifically stated that "the probable cause hearing is a paper review of the reexamination *report(s)* with argument that provides an opportunity for the committing court to weed out frivolous petitions by committed persons alleging that they are no longer dangerous and are fit for release." *Id.* at 438–39 (emphasis added).

¶ 13. Nowhere in *Paulick* did we explicitly prohibit the submission of a second, independent medical reexamination report. In fact, the language of *Paulick* presupposes the submission of a second reexamination report through its use of the word "report(s)." The question remains, however, does Kavanagh's misreading of *Paulick* constitute ineffective assistance of counsel? We conclude that it does not.

¶ 14. The familiar two-pronged test for an ineffective assistance of counsel claim requires Thayer to establish (1) deficient performance and (2) prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). The issue of performance and prejudice presents mixed questions of fact and law. *See State v. Matek*, 223 Wis. 2d 611, 616, 589 N.W.2d 441 ( Ct. App. 1998). Findings of fact will not be upset unless they are clearly erroneous; however, questions regarding the deficiency of an attorney's performance are legal issues we review independently of the trial court. *See id.* To establish deficient performance, Thayer must demonstrate specific acts or omissions of counsel that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To prove prejudice, Thayer must show that counsel's errors were so serious that he was deprived of a fair

427

and reliable outcome. *See id.* at 687. If, however, case law on an issue can be reasonably analyzed in two different ways, the law is unclear; counsel is not required to argue a point of law that is unclear. *See State v. McMahon*, 186 Wis. 2d 68, 84, 519 N.W.2d 621 ( Ct. App. 1994).

¶ 15. As noted above, *Paulick* implicitly allows for the submission of a second, independent medical examination. However, WIS. STAT. § 980.07(1) states that *"[a]t the time of a reexamination* under this section, the person who has been committed may retain or, if he or she is indigent and so requests, the court may appoint a qualified expert or a professional person to examine him or her." (Emphasis added.) There is no evidence in the record that *at the time of the reexamination*, Thayer requested and/or retained an independent medical examiner. If § 980.07(1) mandates that the second, independent medical examiner be retained at the time of the reexamination, then Kavanagh's understanding of *Paulick*, that he was prohibited from presenting any evidence at the probable cause hearing, is a reasonable one because Thayer did not request or retain an independent examiner at the time of his reexamination.

## Burden of Persuasion

## Erroneously Placed Upon Thayer

¶ 16. Thayer argues that both the trial court and his counsel erroneously placed the burden of persuasion upon him at the September 21, 1998 probable cause hearing. We disagree.

■

¶ 17. WISCONSIN STAT. § 980.09(2)(a) does not assign the burden of persuasion at the probable cause hearing to either Thayer or the State. The trial court must simply conduct a paper review to determine whether sufficient facts exist to warrant a full evidentiary hearing on whether the committed person is still a sexually violent person. *See id.*

¶ 18. There is nothing in the record to indicate that the trial court or counsel assigned the burden of persuasion to Thayer. On more than one occasion, the trial court set forth the proper standard. The trial court initially stated, "If I'm reading the statute right . . . it would appear that at this particular hearing . . . the Court is really concerned with one thing and that is whether or not there's a factual basis, at least from a review of the exam, to conclude that there's probable cause to believe that Mr. Thayer is a sexually violent person . . . ." The trial court concluded that "there are no facts presented at this time that would warrant a hearing on whether Mr. Thayer is a sexually violent person" and that there was no factual basis "to justify further proceedings under the provisions of s. 980.09." Furthermore, the district attorney correctly stated the applicable standard: "There is no cause for this Court to make a determination that Mr. Thayer is not a sexually violent person nor is there cause presented in the report or anything presented by Mr. Thayer or counsel that would require an evidentiary hearing on this matter."

■

¶ 19. As Thayer notes in his brief, *Paulick* alluded to the burden of persuasion issue by quoting a footnote in a Drafter's Note from Assembly Bill 955: "This redraft does not shift the burden to the commit-

ted person to prove . . . that he or she is no longer dangerous . . . [because] the redraft creates certain hurdles for a committed person to clear before he or she even gets a hearing [which] effectively requires a person to present some evidence that there is a real question as to whether he or she is still dangerous." *Paulick*, 213 Wis. 2d 437 n.2 (citation omitted). We conclude that Thayer's opportunity to present independent evidence as to dangerousness or in support of a full evidentiary hearing, in addition to the reexamination report review contemplated in the statute, does not impermissibly shift the burden of persuasion to Thayer.

### Full Evidentiary Hearing Warranted

¶ 20. Thayer argues that sufficient facts were introduced at the September 21, 1998 WIS. STAT. § 980.09(2)(a) probable cause hearing to warrant a § 980.09(2)(b) full evidentiary hearing. We disagree.

¶ 21. The trial court will order a full evidentiary hearing only if sufficient facts exist to warrant such a hearing. *See* WIS. STAT. § 980.09(2)(a). Again, a § 980.09(2)(a) probable cause hearing is simply a paper review of all reexamination reports, with argument by counsel. *See Paulick*, 213 Wis. 2d at 438–39. Here, the trial court held that "there are no facts presented at this time that would warrant a hearing on whether Mr. Thayer is a sexually violent person" and that there was no factual basis "to justify further proceedings under the provisions of s. 980.09."

¶ 22. We must segregate factual determinations from conclusions of law and apply the appropriate standard of review to each. *See Meyer v. Classified Ins. Corp. of Wis.*, 179 Wis. 2d 386, 396, 507 N.W.2d 149 (Ct.

App. 1993). While findings of fact will not be set aside unless clearly erroneous, the application of these facts to a legal standard, such as probable cause, is a question of law that we review independently of the trial court. *See id.*

¶ 23. The only evidence before the court at the probable cause hearing was staff psychologist Schwebke's August 24, 1998 report. Schwebke noted that Thayer had previously been diagnosed with atypical paraphilia[2] and a personality disorder with antisocial and narcissistic features. The report acknowledged that Thayer had actively participated in the full Sexually Violent Persons (SVP) Treatment Program and had completed seven of the eight-plus trimesters of the sex offender treatment program. The report also noted that Thayer had demonstrated a more uniform effort in his participation and had made some progress.

¶ 24. However, while Thayer had made additional progress in sex offender treatment, Schwebke concluded that Thayer would still present a substantial risk for further sexual violence. Thayer continued to suffer from the previously diagnosed mental disorders that affect his emotional or volitional capacity, causing him to commit sexually violent acts. According to the report, Thayer remained defensive regarding treatment concerns and still allowed "himself to engage in violent sexual fantasies"; instead of practicing therapeutic techniques to help him modulate his emotions, Thayer sought changes in medication. Thayer himself admitted to Schwebke that he still allowed himself to nurture deviant sexual fantasies and that he had only

---

[2] According to Thayer's original WIS. STAT. ch. 980 commitment petition, atypical paraphilia indicates a disorder involving recurrent intense sexual urges and sexually arousing fantasies.

revealed about seventy percent of his thoughts and feelings. Furthermore, Thayer personally estimated his own risk of recidivism at between twenty-five to thirty percent and admitted he was still likely to engage in future sexual violence. Schwebke reported that Thayer appeared to want to underestimate his risk to reoffend, had the tendency to become lax in his efforts, and needed to invest a consistently strong effort to reflect upon and incorporate corrective feedback from facilitators.

¶ 25. According to Schwebke, Thayer continued to display dangerous and sexually inappropriate behavior when he was involved in treatment programs and still had important issues to address. Thayer continued to engage in distortions and justifications that reflected criminal thinking, and continued to view himself as the victim of others and the victim of depression; he engaged in closed-channel thinking and used emotional reasoning to try to control and manipulate others. Thayer's treatment team recommended that he receive additional treatment, including AODA treatment, covert sensitization treatment, aversion therapy and depression treatment. Schwebke noted that the facts supporting Thayer's 1996 WIS. STAT. ch. 980 commitment remained current and relevant.

¶ 26. A full evidentiary hearing was unwarranted. The only evidence before the trial court indicated that the grounds for Thayer's original WIS. STAT. ch. 980 commitment remained current and relevant, that Thayer continued to display dangerous and sexually inappropriate behavior while involved in treatment programs, that he still had important treatment issues to address and that he was still likely to engage in future sexual violence. The report did not

present any facts that would warrant a full evidentiary hearing pursuant to WIS. STAT. § 980.09(2)(b).

## Trial Court Usurped Role

## At "Paper Hearing"

¶ 27. Thayer argues that the trial court misconstrued its role at the WIS. STAT. § 980.09(2)(a) probable cause hearing and usurped the "function of the factfinder at the full evidentiary hearing under sec. 980.09(2)(b) Stats." Presumably Thayer is attempting to argue that the trial court applied the wrong standard at the probable cause hearing and instead applied the standard to be utilized at the full evidentiary hearing. This argument is similar to Thayer's previous argument that the trial court erroneously placed the burden of persuasion upon Thayer and is equally without merit.

¶ 28. WISCONSIN STAT. § 980.09(2)(a) creates certain hurdles for a committed person to clear before he or she even gets a full evidentiary hearing; this effectively requires a person to present some evidence that there is a real question as to whether he or she is still dangerous. *See Paulick*, 213 Wis. 2d at 437 n.2. Clearly, some weighing of factual evidence must take place if the court is to determine if some evidence exists sufficient to warrant the evidentiary hearing.

¶ 29. On more than one occasion, the trial court set forth and utilized the proper standard. The trial court initially stated, "If I'm reading the statute right . . . it would appear that at this particular hearing . . . the Court is really concerned with one thing and that is whether or not there's a factual basis, at least from a review of the exam, to conclude that there's probable cause to believe that Mr. Thayer is a sexually violent

person . . . ." The trial court concluded that "there are no facts presented at this time that would warrant a hearing on whether Mr. Thayer is a sexually violent person" and that there was no factual basis "to justify further proceedings under the provisions of s. 980.09."

¶ 30. The trial court's role is to evaluate the evidence and determine if sufficient facts exist to warrant a full evidentiary hearing. The trial court fulfilled this role, utilizing the appropriate standard.

## Appointment of Counsel

¶ 31. Thayer contends that his due process rights were violated by the lateness of his appointment of counsel. Specifically, Thayer argues that counsel was not appointed for him until September 15, 1998, with a hearing date scheduled for September 21, 1998. Thayer argues that pursuant to WIS. STAT. § 980.07(1), he has an absolute right to an independent expert examination. However, because of the lateness of the appointment of counsel, it was impossible "to find an expert, make and keep an appointment for a client and produce a written report for court" before the hearing. Thus, Thayer contends that his "statutory rights under sec. 980.07(1) had, for all practical purposes, evaporated due to the passage of time" and he was effectively deprived of his statutory right to an independent examination. This argument is without merit.

¶ 32. WISCONSIN STAT. § 980.03 addresses the rights of persons subject to WIS. STAT. ch. 980 commitments. Paragraph (2)(a) states:

> **(2)** Except as provided in ss. 980.09(2)(a) and 980.10 and without limitation by enumeration, at any hearing under this chapter, the person who is the subject of the petition has the right to:

434

> (a) Counsel. If the person claims or appears to be indigent, the court shall refer the person to the authority for indigency determinations under s. 977.07(1) and, if applicable, the appointment of counsel.

WISCONSIN STAT. § 977.07(1)(a) states, in relevant part, that "[d]etermination of indigency for persons entitled to counsel shall be made as soon as possible . . . ." Thus, there is no specific statutory time established to appoint counsel for an indigent ch. 980 patient. Counsel must simply be appointed as soon as possible.

¶ 33. By failing to waive his right to petition for discharge on August 15, 1998, Thayer was effectively petitioning the court for discharge on that date. Kavanagh was appointed as Thayer's counsel on or about September 15, 1998, for a September 21, 1998 hearing. Not once during the September 21, 1998 probable cause hearing did Kavanagh assert that he did not have sufficient time or ask for additional time to prepare for the WIS. STAT. § 980.09(2)(a) probable cause hearing.

¶ 34. At the November 3, 1999 motion hearing, Thayer, through successor counsel, questioned Kavanagh about the timing of his appointment, asking him if he had sufficient time to prepare for the probable cause hearing. Kavanagh responded that he did. Thayer also specifically asked Kavanagh the following questions:

> Did you consider the question of whether or not [§ ] 980.09(1) provided counsel to an indigent defendant sufficiently early in the process that he can prepare to have a meaningful analysis, even the paper analysis provided in the (2)(a) hearing?

. . . Did you consider the question of whether or not those provisions of [§] 980.09(2)(a) dealing with appointment of counsel were sufficient to provide Mr. Thayer actual and effective representation or whether or not they might violate due process and equal protection; did you look at that issue?

¶ 35. The above questions appear to request Kavanagh to reflect on whether the cited WIS. STAT. ch. 980 provisions regarding appointment of counsel violated Thayer's due process rights. However, judging from Kavanagh's response to the questions and Thayer's current argument, we assume that Thayer was attempting to ask Kavanagh if his appointment six days prior to the probable cause hearing implicated due process rights by not allowing sufficient time to prepare for the hearing. We conclude that Thayer's due process contention is that he and Kavanagh had insufficient time to prepare for the probable cause hearing.

¶ 36. Thayer suggested that there was insufficient time to prepare for the probable cause hearing in his November 3, 1999 statements that "it is clear that [§] 980.09(2) applied to the defendant, who has the same liberty interests that a Chapter 51 individual has, a higher burden of proof, and that's a violation of equal protection, as well as due process, because . . . he does not have access to an attorney who talks to him until the day of the hearing" and that a patient "has no meaningful process, because nobody tells him and nobody assists him . . . ." However, Thayer never explicitly argued that the timing of Kavanagh's appointment violated his due process rights and the trial court never addressed or ruled on that issue.

¶ 37. It is Thayer's burden to establish on the record that the late appointment of counsel resulted in a due process violation. *See Allen v. Allen*, 78 Wis. 2d

263, 270, 254 N.W.2d 244 (1977). Normally, a party must raise and argue an issue with some prominence to allow the trial court to address the issue and make a ruling. *See Lenz Sales & Serv. v. Wilson Mut. Ins. Co.*, 175 Wis. 2d 249, 257, 499 N.W.2d 229 (Ct. App. 1993). We will, however, consider Thayer's due process issue in the interest of good judicial administration, *see State v. Dyess*, 124 Wis. 2d 525, 535–36, 370 N.W.2d 222 (1985), and we conclude that the timing of Kavanagh's appointment as Thayer's counsel did not violate Thayer's due process rights.

¶ 38. Kavanagh was appointed as Thayer's counsel on or about September 15, 1998, for a September 21, 1998 hearing. Kavanagh admitted that he considered whether the timing of his appointment allowed sufficient time to prepare a meaningful analysis for the hearing, but then concluded that he did not "see how any more time would have been of any benefit." Kavanagh stated that he had had an opportunity to review the psychologist's reexamination report several times and that he had read about "10 pounds" of paper work related to WIS. STAT. ch. 980 law. Most importantly, Kavanagh asserted that had he felt he needed more time to prepare or to gather evidence for the hearing, he simply would have asked the court for additional time. Kavanagh stated:

> [I]f I ever felt I didn't have enough time, I would tell the Court that. I have cases scheduled quite often to be heard before I'm ready and I just tell the Court I'm not ready and I insist on having more time and I get it. If I needed more time here I would have gotten it. . . . I didn't need any more time that I know of.

Kavanagh insisted that no prejudice accrued to Thayer because of the timing of the appointment. Kavanagh's somewhat tardy appointment as Thayer's counsel did not in this instance violate Thayer's due process rights because Kavanagh did not need additional time to prepare for the hearing and Thayer was not prejudiced by the timing of the appointment.

## CONCLUSION

¶ 39. Thayer did not have the right to submit all evidence that he wanted to at his WIS. STAT. § 980.09(2)(a) hearing but could only have submitted a second medical examination report if he had requested one at the time of his reexamination. He did not. Therefore, his counsel was not deficient for failing to present evidence at the September 21, 1998 hearing. The burden of persuasion was not erroneously placed upon Thayer at this hearing nor did the trial court misconstrue its role. The facts presented at this hearing were insufficient to warrant a full evidentiary hearing, and Thayer's due process rights were not violated by the timing of counsel's appointment. The orders of the trial court are therefore affirmed.

*By the Court.*—Orders affirmed.